Argued October 21, affirmed December 27, 1976, reconsideration denied February 2, petition for review denied June 1, 1977

STATE OF OREGON, *Respondent,*

*v.*

CHARLES KENT RANDALL, *Appellant.*

(No. 47042, CA 6154)

557 P2d 1386

*Gary L. Hooper,* Deputy Public Defender, Salem, argued the cause for appellant. On the brief were Gary D. Babcock, Public Defender, and John K. Hoover, Deputy Public Defender, Salem.

*Donald L. Paillette,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Tanzer and Richardson, Judges.

RICHARDSON, J.

## RICHARDSON, J.

Defendant was on parole when he was indicted for criminal activity in drugs. He appeals the conviction, arguing that his testimony from a previous parole revocation hearing should not have been admitted at trial.

Defendant was placed on parole in August, 1975, from Oregon State Correctional Institution, where he was serving a sentence resulting from a conviction for criminal activity in drugs. During the term of his parole he was indicted for two counts of criminal activity in drugs resulting from a sale of heroin to an undercover narcotics officer.

Defendant's parole officer had learned of the impending indictment, interviewed him and placed him in jail. Prior to trial a parole revocation hearing was held before a hearings officer of the parole board. At this hearing defendant was represented by counsel and in answer to questions put to him by his attorney, he admitted he had arranged the heroin sale and had used some of the heroin.

Defendant's statement at the parole hearing had been tape recorded and the state offered in its case in chief that part of the recording in which defendant admitted arranging the sale. Defendant agreed at trial the statement was voluntarily made at the parole hearing. At trial defendant testified to essentially the same facts he had recited at the parole hearing, posing entrapment as a defense.

Defendant urges three reasons the taped statement should not have been received as evidence. First, he argues he should have been granted "use immunity" for his testimony at the parole hearing. Second, he argues that if he was not entitled to "use immunity," then he should have received *"Miranda"* warning at the revocation hearing. Third, he contends that the evidence should have been offered as impeachment rather than as substantive evidence in the state's case in chief.

[ 871 ]

The "use immunity" doctrine is based upon the Fifth Amendment privilege against compelled self-incrimination.[1] A witness who is protected by this privilege may rightfully refuse to answer questions unless he is protected by a grant of immunity against use of his answers in a subsequent criminal prosecution in which he is a defendant. Absent the protection of immunity, if he is nevertheless compelled to answer, his answers cannot be used against him in the later prosecution. In the context of this case defendant claims he was compelled to testify in the parole hearing and since no immunity was extended to him the testimony he gave is constitutionally inadmissible at his criminal trial.

The defendant cites *Baxter v. Palmigiano,* 425 US 308, 96 S Ct 1551, 47 L Ed 2d 810, 820 (1976), as a basis for excluding his statements. In *Baxter* disciplinary proceedings were instituted against a penitentiary inmate for conduct which might also be the basis for state criminal prosecution. The prisoner was advised at the disciplinary hearing of his right to remain silent, but was also advised his silence would be used against him in the hearing. The Supreme Court summarized the "use immunity" concept:

> "* * * disciplinary hearings are not criminal proceedings; but if inmates are compelled in those proceedings to furnish testimonial evidence that might incriminate them in later criminal proceedings, they must be offered 'whatever immunity is required to supplant the privilege' and may not be required 'to waive such immunity.' *Lefkowitz v Turley, supra,* at 85, 38 L Ed 2d 274, 94 S Ct 316; *Garrity v New Jersey,* 385 US 493, 17 L Ed 2d 562, 87 S Ct 616 (1967); *Gardner v Broderick,* 392 US 273, 20 L Ed 2d 1082, 88 S Ct 1913 (1968); *Sanitation Men v Sanitation Comm'r,* 392 US 280, 20 L Ed 2d 1089, 88 S Ct 1917 (1968). * * *"

---

[1] Use immunity in its proper sense is a statutory concept used to obtain testimony which otherwise might be excluded under the Fifth and Fourteenth Amendments. If the prosecuting agency lacks the authority or inclination to grant immunity the constitutional principles are then invoked to exclude compelled testimony.

The cases cited by the Supreme Court have a common thread; a compulsion to testify at the initial proceeding in the face of a sanction imposed for refusal to testify. In *Lefkowitz v. Turley,* 414 US 70, 94 S Ct 316, 38 L Ed 2d 274 (1973), architects who refused to testify before the grand jury or to waive their rights against self-incrimination lost their eligibility to contract with the state; *Garrity v. New Jersey,* 385 US 493, 87 S Ct 616, 17 L Ed 2d 562 (1967), police officers under investigation for traffic ticket fixing were required to testify or be terminated; *Gardner v. Broderick,* 392 US 273, 88 S Ct 1913, 20 L Ed 2d 1082 (1968), police officers appearing before a grand jury investigating departmental corruption were required to testify or be terminated; *Sanitation Men v. Sanitation Comm'r,* 392 US 280, 88 S Ct 1917, 20 L Ed 2d 1089 (1968), sanitation workers who refused to testify before the sanitation commissioner regarding corruption were terminated.

■ Absent a compulsion to testify by imposition of some sanction upon exercise of the privilege to remain silent a witness has a free choice. If he then testifies pursuant to that free choice the testimony is admissible in a subsequent criminal proceedings against him.

In *Baxter,* however, the Supreme Court found there was no such compulsion despite the fact the prisoner's silence would raise an unfavorable inference. The court said:

> "* * * [A] prison inmate in Rhode Island electing to remain silent during his disciplinary hearing, as respondent Palmigiano did here, is not in consequence of his silence automatically found guilty of the infraction with which he has been charged. Under Rhode Island law, disciplinary decisions 'must be based on substantial evidence manifested in the record of the disciplinary proceedings.' Morris v Travisono, 310 F Supp 857, 873 (RI 1970). It is thus undisputed that an inmate's silence in and of itself is insufficient to support an adverse decision by the disciplinary board. In this respect, this case is very different from the circumstances before the

Court in the Garrity-Lefkowitz decisions, where refusal to submit to interrogation and to waive the Fifth Amendment privilege, standing alone and without regard to the other evidence, resulted in loss of employment or opportunity to contract with the State. * * *"

We find in the present case there is a similar lack of compulsion for the defendant's testimony at the parole revocation hearing.

Although not matching the rigors of a criminal trial a parole hearing is an adjudicative process designed to resolve factual issues and arrive at the truth. A parolee is entitled to constitutional due process before the conditional liberty of parole can be taken away. *Gagnon v. Scarpelli,* 411 US 778, 93 S Ct 1756, 36 L Ed 2d 656 (1973); *Morrissey v. Brewer,* 408 US 471, 92 S Ct 2593, 33 L Ed 2d 484 (1972); *Perry v. Williard,* 247 Or 145, 427 P2d 1020 (1967); *State v. Guisinger,* 13 Or App 632, 511 P2d 416 (1973); *State v. Frye,* 2 Or App 192, 465 P2d 736 (1970); ORS 144.343. The burden is on the state to prove there has been a violation of the conditions of parole. Conversely, there is no evidentiary burden on defendant, nor is there automatic termination of parole if he declines to testify. He has a free choice in determining whether to give evidence or remain silent.

Defendant argues there is a practical compulsion to testify in order to completely explain his position and thus he is deprived of a free choice to testify or remain silent. This raises the issue of whether there is an unconstitutional tension between an effective due process right to be heard and the Fifth Amendment right to remain silent.

The circuit court of appeals in *Flint v. Mullen,* 499 F2d 100 (1st Cir) *cert denied* 419 US 1026 (1974), resolved this conflict adverse to defendant's contention;

"* * * The choice whether or not to exercise one's Fifth Amendment right to remain silent must often be made in a setting where there is a concomitant due

process right to be heard. Petitioner's decision was, in effect, the same choice he or any other defendant must make when brought to trial * * * Here * * * the government had to prove its case by extrinsic evidence and there is no indication that defendant was penalized for silence except to the degree that anyone who claims the privilege may be said to forego the possibility of persuading a court in his favor." 499 F2d at 103.

The United States Supreme Court faced a similar issue in *McGautha v. California,* 402 US 183, 91 S Ct 1454, 28 L Ed 2d 711 (1971), involving a unitary trial in which the issues of guilt and sentencing were determined at the same time upon the same body of evidence. The defendant faced the decision of speaking out for a lenient sentence and risking self-incrimination, or remaining silent and risking a harsher sentence. The court held this did not unconstitutionally burden defendant's Fifth Amendment right, reasoning that "[t]he criminal process, like the rest of the legal system, is replete with situations requiring 'the making of difficult judgments' as to which course to follow * * *." 402 US at 213.

The defendant's compulsion to testify at his parole hearing is a matter of strategy and not a legal compulsion enforced by a sanction if he remains silent. This strategy choice, albeit a difficult one, does not deprive him on the free choice to testify. Since there is no compulsion to testify he is not entitled to the benefits of the "use immunity" doctrine which would exclude his testimony at the subsequent criminal prosecution.

We note the California Supreme Court has arrived at a different conclusion in a similar factual situation. *People v. Coleman,* 13 Cal 3d 867, 120 Cal Rptr 384, 533 P2d 1024 (1975). The court in that case declined to find a constitutional prohibition for use of parole hearing testimony in a criminal trial; but as part of the court's supervisory powers to assure the sound administration of justice, the court fashioned a judicial rule excluding at trial testimony given in the

parole revocation hearing. The principal basis of the court's holding was that the state gained an unfair advantage by scheduling the revocation hearing before the trial. With its relaxed rules of evidence and lower burden of proof, the revocation hearing provided an unfair opportunity for the state to force the parolee into making incriminating statements. The court reasoned the state having the burden of proof must produce sufficient evidence to establish guilt before the defendant must decide whether to remain silent or testify in his own behalf. The court further reasoned that consonant with fundamental fairness he should be given a free choice to testify at his parole hearing without fear of incriminating himself in future criminal proceedings.

We decline to adopt the reasoning of the California court. Arguably it may be preferable to schedule the criminal trial first followed by the revocation hearing. *Small v. United States Board of Parole,* 421 F2d 1388 (10th Cir) *cert denied* 397 US 1079 (1970). However, this preference is not sufficient to mandate an exclusionary rule as imposed by the California court in *Coleman.*

Defendant asserts if he is not entitled to "use immunity" for his parole revocation testimony he should have been advised of the constitutional rights developed in *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR 3d 974 (1966), before testifying and warned his statements may subsequently be used against him.

The advice of rights and warnings are required by *Miranda* only in cases of "in-custody interrogation" by which is meant "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. * * *" (Footnote omitted). 384 US at 444. A parole revocation hearing in which there are minimum due process guarantees is not the type of question and answer proceeding which the court

described in *Miranda.* Furthermore, the defendant's statement was not given in response to questioning by law enforcement officers but in response to questions from his own lawyer.

The court in deciding *Miranda* was concerned with protection of the right against compelled incrimination and dealt with this concern by requiring warnings in situations where the privilege might come under undue pressure. One of the principal means of protecting this privilege was the right to assistance of counsel, retained or appointed. The court noted:

> "* * * The presence of counsel, in all the cases before us today, would be the adequate protective device necessary to make the process of police interrogation conform to the dictates of the privilege. His presence would insure that statements made in the government-established atmosphere are not the product of compulsion." 384 US at 466

The presence of counsel at the parole revocation hearing was adequate protection of defendant's constitutional rights.

Defendant cites a number of cases wherein courts have excluded statements given by a parolee to his parole officer where he was not advised of his *Miranda* rights prior to the questioning. *New Jersey v. Pace,* 425 US 943, 96 S Ct 1684, 48 L Ed 2d 187 (1976); *United States v. Deaton,* 468 F2d 541 (5th Cir 1972); *cert denied* 410 US 934 (1973); *State v. Lekas,* 201 Kan 579, 442 P2d 11 (1968). The questioning by a parole officer which may have some of the attributes of police interrogation is, however, markedly different from a parole hearing where the defendant is represented by counsel and surrounded by minimum due process protections.

Defendant's final argument against admission of the recorded statement contends it was error for the state to offer it in the case in chief. He urges that because he later testified at trial to substantially the same facts, the state's earlier playing of the recording

destroyed his credibility by casting the statement in the status of a confession of guilt rather than allowing him to present the evidence as proof of entrapment.

Regardless of the value of the evidence to the defense, it is permissible for the state to offer the evidence in its case in chief. The defendant may not dictate the manner in which the state may utilize evidence in its possession so as to best benefit defendant's presentation.

Affirmed.