STATE of Iowa, Appellee,

v.

**Joel Dean WAHLERT, Jr., Appellant.**

No. 85–498.

Supreme Court of Iowa.

Dec. 18, 1985.

Terry Wright, Amy Christensen Couch and Margaret LaMarche, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Ann DiDonato, Asst. Atty. Gen., and David Welu, Co. Atty., for appellee.

Considered by REYNOLDSON, C.J., and McCORMICK, McGIVERIN, LARSON, and SCHULTZ, JJ.

REYNOLDSON, Chief Justice.

Defendant Joel Dean Wahlert, Jr., has appealed from a district court order revoking probation and judgment sentencing him to a term not to exceed twenty-five years for a prior conviction of robbery and a term not to exceed five years for a prior conviction of terrorism. The controlling issue is whether constitutional due process or public policy concerns required the district court to continue the revocation hearing until the new criminal charge that triggered the revocation process had been tried. The district court overruled the continuance motions and we affirm.

Defendant was charged with the crimes of first-degree robbery and terrorism in Dallas County. July 8, 1982, he pleaded guilty to both charges and was sentenced to a term not to exceed twenty-five years. After defendant appealed, the State moved for a remand for resentencing because defendant's counsel had not advised the court that defendant was a minor when the crimes were committed, hence imprisonment was not mandatory. Iowa Code § 232.8(3) (1981); *see State v. Vavrik*, 336 N.W.2d 193, 194–95 (Iowa 1983). We granted the motion to remand and dismissed the appeal.

Upon remand the district court, in light of Iowa Code subsection 232.8(3) and recommendations of prison counselors, deferred judgment on June 8, 1984, and placed defendant on probation for five years.

January 11, 1985, defendant was arrested and charged with the January 7, 1985, second-degree burglary of a rural home near Redfield, Iowa. His probation officer filed in court a report of this activity, as well as defendant's two citations for traffic violations. After a hearing was set to consider revoking defendant's probation, he filed a motion to continue the hearing until final disposition of the expected criminal trial on the burglary charge.

The district court denied defendant's motion and the revocation hearing was held on February 15, 1985. At that time defendant again renewed his motion for continuance, which was denied for the second time. The State presented several witnesses, including a person who participated in the burglary. Defendant did not take the stand. The court revoked defendant's probation, based on the evidence presented "and the lack of evidence that was presented by the defendant."

March 8, 1985, defendant was sentenced as we have indicated above, the court having refused to grant defendant another deferred sentence. The burglary charge against the defendant then was dismissed.

I. On appeal defendant contends trial court reached its decision on an inadequate record, and abused its discretion in not

continuing his deferred judgment and in sentencing him to the maximum sentences of twenty-five and five years. We have examined the record carefully, and find the district court's determination that defendant participated in the burglary is supported by a preponderance of credible testimony the court well could have believed. We further find the district court, in the circumstances presented, did not abuse its discretion in not continuing defendant's deferred judgment and in sentencing him to the prison terms. It would add nothing to our jurisprudence to detail the facts that support these holdings.

II. We shall examine, however, defendant's assertion it was a violation of fundamental fairness and due process, apparently under the fourteenth amendment to the United States Constitution, and against public policy, for the court to deny his motion for a continuance of the revocation hearing until after the disposition of the criminal charge. An examination of our decisions discloses that we have never been required to reach the issue now before us.

The defendant concedes that on review we disturb the district court's disposition of a motion for continuance "only where there has been a clear abuse of judicial discretion and injustice thereby done to the defendant." *State v. Kyle*, 271 N.W.2d 689, 691 (Iowa 1978); *see State v. McGinnis*, 243 N.W.2d 583, 586 (Iowa 1976). *See also* Iowa R.Civ.P. 183(a). Defendant, however, argues an injustice occurred here because he was forced to face a revocation hearing followed by a pending criminal trial, which created "an unnecessary and unreasonable tension" between his fifth amendment right to remain silent and the danger that his testimony in the first proceeding might be used to convict him in the criminal proceeding.

Defendant's contention must be considered against the framework in which a probation revocation hearing takes place. Because loss of probation deprives an individual of a *conditional* liberty, the United States Supreme Court has held limited due process rights exist, including notice and hearing. *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 786, 93 S.Ct. 1756, 1759–62, 36 L.Ed.2d 656, 661–62, 664 (1973). Revocation hearings, however, are not part of a criminal prosecution. *Id.* at 782, 93 S.Ct. at 1759–60, 36 L.Ed.2d at 661–62. It follows that the "full panoply of rights" accorded a defendant in a criminal prosecution is not required. *See Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972).

Revocation proceedings are informal, *Calvert v. State*, 310 N.W.2d 185, 187 (Iowa 1981), and the rules of evidence are not strictly applied. *State v. Hughes*, 200 N.W.2d 559, 563 (Iowa 1972). The State must demonstrate by a preponderance of the evidence that defendant violated the conditions of his probation. *Calvert*, 310 N.W.2d at 187. Moreover, defendant's silence at such hearings can be considered by the court, along with other factors, in making a determination whether defendant violated the terms of probation. *Id.* at 188–89 (Court considered silence after State made prima facie showing of a violation.). *Cf. Baxter v. Palmigiano*, 425 U.S. 308, 316–20, 96 S.Ct. 1551, 1557–59, 47 L.Ed.2d 810, 820–22 (1976) (Adverse inferences may be drawn from defendant's silence at prison disciplinary proceedings and considered as one factor in the determination of the issues.). It is against this backdrop that we further explore defendant's constitutional argument.

Defendant asserted in district court, and argues here, that by testifying at the revocation hearing he risks making incriminating statements that may be used against him in the trial of the underlying substantive offense. He must, therefore, "elect" whether he will testify and risk incriminating himself for the purpose of the latter, or remain silent and risk revocation of his probation because he is unable to describe mitigating circumstances to the revocation court. Because the goal of probation is rehabilitation, *State v. Darrin*, 325 N.W.2d 110, 112 (Iowa 1982); Iowa Code § 907.7 (1983), defendant contends the court should

hear explanations for his acts even though such conduct constitutes violations. *See People v. Coleman,* 13 Cal.3d 867, 873–74, 533 P.2d 1024, 1031, 120 Cal.Rptr. 384, 391 (1975). To remedy the alleged infringement of his rights, defendant asserts we should adopt a rule requiring the State either hold the revocation hearing after the criminal trial or provide him "use immunity," thus barring use of his revocation hearing testimony at any subsequent criminal prosecution on the underlying crime.

We alluded to this constitutional issue in *Calvert,* 310 N.W.2d at 188–89, although we were not required to resolve it. Our research has disclosed only one case, *Melson v. Sard,* 402 F.2d 653, 655 (D.C.Cir. 1968), that supports defendant's constitutional violation argument. *Melson* was filed before three United States Supreme Court decisions: *Baxter,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810; *Lefkowitz v. Cunningham,* 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977); *McGautha v. California,* 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971), *vacated on other grounds,* 408 U.S. 941, 92 S.Ct. 2873, 33 L.Ed.2d 765 (1972), all of which further staked out the parameters of "compulsive" elections. *Melson* has not been followed in any other jurisdictions, and defendant's thesis has been rejected by other courts. *See, e.g., Ryan v. Montana,* 580 F.2d 988, 991–94 (9th Cir.1978), *cert. denied,* 440 U.S. 977, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979); *Commonwealth v. Kates,* 452 Pa. 102, 111–14, 305 A.2d 701, 707–08 (1973).

The *Ryan* court concluded that comparable tension often causes a defendant to make strategic choices between alternatives throughout the criminal process. On similar facts, that court held the choice did not force the defendant to make an impermissible election between two constitutional rights. 580 F.2d at 990–92. Because the State did not compel Ryan to testify, the Ninth Circuit court distinguished the probation revocation situation from the one in *Lefkowitz,* where the refusal of a political party officer to testify before a grand jury and waive his or her fifth amendment privilege meant the immediate loss of the individual's political position. 431 U.S. at 802–03, 97 S.Ct. at 2134, 53 L.Ed.2d at 5.

In *McGautha* it was argued an "intolerable tension between constitutional rights" was created by an Ohio statute that permitted guilt and punishment to be determined in a single-trial procedure. 402 U.S. at 211, 91 S.Ct. at 1469, 28 L.Ed.2d at 728. In this situation the defendant, seeking to testify with respect to punishment, might become a witness against himself or herself on the issue of guilt. The Supreme Court, however, rejected defendant's argument, finding defendant was faced with a difficult, but not unconstitutional, choice.

> The criminal process, like the rest of the legal system, is replete with situations requiring "the making of difficult judgments" as to which course to follow. Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose. The threshold question is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved.

*Id.* at 213, 91 S.Ct. at 1470, 28 L.Ed.2d at 729 (citation omitted). Thus, the Supreme Court concluded the Constitution does not require that defendant receive the "best of all worlds." *Id.* at 221, 91 S.Ct. at 1474, 28 L.Ed.2d at 734.

We agree that the disposition of a criminal prosecution prior to a probation revocation hearing is not constitutionally mandated and a continuance in the present case was not constitutionally necessary. *See, e.g., United States v. Wickham,* 618 F.2d 1307, 1311 (9th Cir.1979); *United States v. Brugger,* 549 F.2d 2, 4–5 (7th Cir.), *cert. denied,* 431 U.S. 919, 97 S.Ct. 2186, 53 L.Ed.2d 231 (1977); *People v. Lee,* 88 Ill. App.3d 396, 397–99, 43 Ill.Dec. 646, 647–48, 410 N.E.2d 646, 647–48 (1980); *Dail v. State,* 96 Nev. 435, 437–38, 610 P.2d 1193, 1194 (1980); *State v. Randall,* 27 Or.App. 869, 872–75, 557 P.2d 1386, 1388–90 (1976);

*State v. Cyganowski,* 21 Wash.App. 119, 121, 584 P.2d 426, 427 (1978).

We thus turn to the question whether public policy nonetheless should dictate the same result for this defendant. It is true that several courts have indicated the constitutional question is so close that action must be taken to relieve the "uneasy tension." Those courts have invoked their supervisory powers to adopt a rule requiring either the probation revocation hearing be held after the disposition of the criminal prosecution or the defendant be granted "use immunity" so that his testimony at the revocation hearing will not be used against him at a later criminal prosecution. *See McCracken v. Corey,* 612 P.2d 990, 997–98 (Alaska 1980); *Coleman,* 13 Cal.3d at 888–89, 533 P.2d at 1041–42, 120 Cal. Rptr. at 401–02; *People v. Rocha,* 86 Mich. App. 497, 512–13, 272 N.W.2d 699, 706–07 (1978); *State v. Hass,* 268 N.W.2d 456, 460 (N.D.1978); *State v. DeLomba,* 117 R.I. 673, 676–80, 370 A.2d 1273, 1275–76 (1977). *See also* ABA, *Standards for Criminal Justice* § 18–7.5(f), at 18–525 (2d ed. 1980). Several of these courts were concerned about the State's misuse of the prior revocation hearing as an investigatory vehicle to obtain evidence to prove its case in the subsequent criminal trial. *See, e.g., Coleman,* 13 Cal.3d at 875–77, 533 P.2d at 1032–33, 120 Cal.Rptr. at 392–93; *Rocha,* 86 Mich.App. at 503–04, 272 N.W.2d at 702–03. Such action, of course, would frustrate the fifth amendment policy requiring the State to shoulder the entire burden to prove its case in criminal prosecutions. *Coleman,* 13 Cal.3d at 875–77, 533 P.2d at 1032–33, 120 Cal.Rptr. at 392–93.

Other courts, however, have rejected any temptation to adopt a supervisory rule such as the one advanced in *Coleman.* Those courts have concluded that defendant is faced with a mere strategic choice and there is no reason to interfere with trial court's discretion in making a prompt determination whether the rehabilitation goal is being met through probation. *See Dail,* 96 Nev. at 439, 610 P.2d at 1195; *Cyganowski,* 21 Wash.App. at 121–22, 584 P.2d

at 427–28. *See also Ryan,* 580 F.2d at 993–94. Society has an interest in a prompt resolution of an alleged probation violation because defendant may pose a danger if left at liberty. *Cyganowski,* 21 Wash.App. at 122, 584 P.2d at 428; *see Darrin,* 325 N.W.2d at 112. Further, these decisions emphasized that judicial restraint must be exercised because the legislature has the expertise to address public policy concerns. *See Dail,* 96 Nev. at 439, 610 P.2d at 1195; *cf. Randall,* 27 Or.App. at 876, 557 P.2d at 1390. Finally, the revocation hearing procedures provide the limited due process necessary to comport with *Gagnon. See Dail,* 96 Nev. at 439, 610 P.2d at 1195; Iowa Code ch. 908 (1983).

Similarly, we have been cognizant of the need for judicial restraint and deference to the legislature when addressing public policy concerns. *See Montandon v. Hargrave Construction Co.,* 256 Iowa 1297, 1300, 130 N.W.2d 659, 660 (1964). Although we have supervisory power, *see* Iowa Const. art. V, § 4, we have used such power sparingly. *Welty v. McMahon,* 316 N.W.2d 836, 838 (Iowa 1982); *Warren County v. Judges of the Fifth Judicial District,* 243 N.W.2d 894, 897 (Iowa 1976); *see* 20 Am. Jur.2d *Courts* § 117 (1965); Annot., 112 A.L.R. 1351, 1373 (1938). Because the matter is one of public policy, we believe any changes should be left to the legislature.

In summary, we hold that neither the federal constitution nor sound public policy demands that a probation revocation hearing be delayed until after trial of the criminal charge that leads to the hearing. We mandate no protective measures under our supervisory power. We determine the district court committed no error in denying the motion for continuance and in imposing sentence. This case is affirmed.

AFFIRMED.

All Justices concur except McCORMICK, J., who concurs specially.

McCORMICK, Justice (concurring specially).

I concur in the court's opinion except for the basis of the rejection of defendant's

public policy argument. Defendant seeks to invoke our supervisory authority to establish a rule of practice in the courts. I believe this court has a right and responsibility to adopt such rules in appropriate situations. I do not accept the premise that the judicial branch should ever refuse to exercise its authority to adopt rules of practice. to improve the administration of justice. We should not abdicate our responsibility to enhance the quality of justice in Iowa merely because the problem is one that the General Assembly can also address.

That the judicial branch has the necessary authority is well established. *See Iowa Civil Liberties Union v. Critelli*, 244 N.W.2d 564, 568–69 (Iowa 1976). That the judicial branch has the responsibility to adopt rules of practice to implement public policy manifest in our constitutions and statutes has never been more eloquently pointed out than in the dissenting opinion of Justice Weaver in *State v. Tonn*, 195 Iowa 94, 120, 191 N.W. 530, 540 (1923), in advocating retention of the exclusionary rule in search and seizure cases:

> It seems little less than solemn mockery for us to protest our devotion to the "sacred constitutional right," or our virtuous purpose to rigidly enforce it and in the same breath declare our approval of the admission of "evidence without any inquiry as to how that evidence was obtained." ... It is this growing disregard of fundamental rights and orderly methods of justice, which has given rise to the infamies of the so-called "sweat box" and "third degree" practices which cast discredit upon our professions of loyalty to law. The reasoning which justifies those things, and justifies a rule by which the court will refuse to inquire into the means employed to obtain evidence, if carried to its logical results, would be equally effective to admit evidence procured by physical torture and restore the rack and thumbscrew to the dignity of judicial aids in the prosecution of alleged criminals.

We have frequently recognized and exercised our independent constitutional responsibility to supervise the processes by which justice is administered in our criminal courts.

Notable examples include this court's decisions in *Polly v. State*, 355 N.W.2d 849 (Iowa 1984) (adopting cause and prejudice standard for state collateral review proceedings), *State v. Reaves*, 254 N.W.2d 488 (Iowa 1977) (establishing conditions precedent to challenge on appeal of guilty plea convictions), *Brainard v. State*, 222 N.W.2d 711 (Iowa 1974) (adding to standard for taking guilty pleas), *State v. Martin*, 217 N.W.2d 536 (Iowa 1974) (adopting standard for impeachment through use of prior convictions), and *State v. Sisco*, 169 N.W.2d 542 (Iowa 1969) (adopting rules governing taking of guilty pleas). In the present case, the question should not be whether the court should defer to the legislature but whether the rule advocated by defendant should be adopted in the interests of justice.

Cogent arguments exist to support defendant's position. Three members of this court found them persuasive in *State v. Hughes*, 200 N.W.2d 559 (Iowa 1972). I still believe that in an ideal system the practice now incorporated in ABA Standards, *Sentencing Alternatives and Procedures* 18–7.5 (2d ed.1980) should be adopted. Under that standard, when a revocation application is based solely on an alleged criminal law violation the revocation proceeding should be deferred until disposition of the charge. The probationer may be detained pending that disposition if the court finds public safety would otherwise be endangered. The probationer is given the option of a prompt revocation hearing. The problem, however, is that our system cannot accommodate the additional burdens of hearing time, trial time, and procedural complexity that this standard would probably impose. Because of resource shortages, our courts must struggle now to comply with postconviction action and criminal case processing demands, and the additional burden would aggravate the situation. On this basis I agree with

the court that we must reject the rule advocated by defendant.