894 P.2d 395

STATE of New Mexico,
Plaintiff–Appellee,

v.

Lawrence GUTIERREZ, Defendant–
Appellant.

No. 15391.

Court of Appeals of New Mexico.

Feb. 17, 1995.

Certiorari Denied April 5, 1995.

Tom Udall, Atty. Gen., Patricia Gandert, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Hilary Lamberton, Lamberton & Riedel, Santa Fe, for defendant-appellant.

## OPINION

HARTZ, Judge.

When is the constitutional privilege against compulsory self-incrimination self-executing; that is, when is a person's answer to a question protected by the privilege even though the person did not invoke the privilege at the time? Or, to be more precise, when are the circumstances surrounding the asking of a question so inherently coercive that any answer is "compelled" in the constitutional sense? This appeal does not require us to provide a universal answer, but it raises the issue in an interesting context.

Defendant appeals his conviction for possession of cocaine. His principal challenge to the conviction concerns the admissibility of a statement he made at a preliminary parole revocation hearing (the Probable Cause Hearing). Defendant was previously convicted of trafficking cocaine in 1989. He was released on probation and parole but was subject to random drug testing. On December 16, 1992 Defendant submitted to a urinalysis in Portales. Shortly thereafter he fled to Texas, where he was arrested. He was transported back to New Mexico in April 1993.

The Probable Cause Hearing was conducted on May 17, 1993. Hearing Officer Jim Byrd announced that the purpose of the hearing was to determine whether there was probable cause to find that Defendant had violated a condition of his parole. Byrd told Defendant that the hearing would be taped and that the parole board might "listen to it at a later time." Although he informed Defendant of his right to counsel, Defendant

waived that right. Byrd also informed Defendant that (1) he could waive the hearing, (2) he was entitled to advance written notice of the hearing and a written copy of the decision, (3) he was entitled to see all evidence presented against him and to question all witnesses against him, (4) the rules of criminal procedure and evidence did not apply to the hearing, and (5) Byrd would be a neutral party and would consider all evidence presented. Defendant was thus afforded more than the minimum due process requirements for a preliminary parole revocation hearing. *See Morrissey v. Brewer,* 408 U.S. 471, 484–90, 92 S.Ct. 2593, 2601–04, 33 L.Ed.2d 484 (1972). In particular, we note that *Morrissey* does not require that the parolee be advised of the right to remain silent. *Id.*

After the parole officer read the charge that Defendant had violated a condition of his parole by consuming cocaine, Byrd asked Defendant whether he wished to admit or deny the alleged violation. Defendant responded: "It was dirty; I did use cocaine." He also admitted that he had violated several other parole conditions by failing to attend counseling, failing to report to his parole officer, changing his residence, changing his employment, and leaving the state. Byrd determined that there was probable cause to believe that Defendant had violated the conditions of his parole and ordered Defendant to appear before the parole board. At the parole board hearing Defendant denied using cocaine, but the board revoked his parole based on evidence before it.

Defendant was later charged with possessing cocaine in December 1992. At the bench trial on the charge, Defendant stipulated to the validity of the urinalysis but objected to evidence of his inculpatory statement at the Probable Cause Hearing. The court overruled the objection and convicted Defendant of possession of cocaine.

Defendant argues on appeal that (1) the admission at trial of his Probable Cause Hearing statement violated his rights under the Fourteenth Amendment to the United States Constitution (under which the Fifth Amendment is applied to the states, *see Minnesota v. Murphy,* 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984)) and Article II, Section 15 of the New Mexico Constitution, and (2) there was insufficient evidence to sustain his conviction. We affirm.

## DISCUSSION

The Fifth Amendment states that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." The New Mexico Constitution provision is similar: "No person shall be compelled to testify against himself in a criminal proceeding...." Art. II, § 15.

As a general rule, the constitutional privilege against self-incrimination is available only if it is invoked as the ground for refusing to speak. *See* David M. Nissman & Ed Hagen, *Law of Confessions* § 3:17, at 3–36 (2d ed. 1994). At judicial and administrative proceedings

[t]he answers of ... a witness to questions put to him are not compelled within the meaning of the Fifth Amendment unless the witness is required to answer over his valid claim of the privilege.... If [the witness] desires the protection of the privilege, he must claim it or he will not be considered to have been "compelled" within the meaning of the [Fifth] Amendment.... [I]n the ordinary case, if a witness under compulsion to testify makes disclosures instead of claiming the privilege, the government has not "compelled" him to incriminate himself....

... [T]he Constitution does not forbid the asking of criminative questions, and nothing in [the United States Supreme Court's] prior cases suggests that the incriminating nature of a question, by itself, excuses a timely assertion of the privilege.

*Murphy,* 465 U.S. at 427–28, 104 S.Ct. at 1142 (internal quotations and citations omitted).

In other words, a witness before a judicial or administrative tribunal ordinarily is entitled to no protection under the privilege against self-incrimination unless the witness invokes the privilege and refuses to answer. In the present case Defendant did not invoke the privilege during the Probable Cause Hearing. Therefore, for Defendant to prevail on appeal there must be some unique

characteristics of preliminary parole revocation hearings that differentiate them from other administrative and judicial proceedings. To determine whether there are such unique characteristics, we turn for guidance to the discussion by the Supreme Court in *Murphy.*

In that case, the defendant, Marshall Murphy, was on probation after serving a prison term for false imprisonment. The terms of his probation required him to participate in a treatment program for sexual offenders, report to his probation officer as directed, and be truthful with the probation officer "in all matters." He was advised that violation of these conditions could result in a probation revocation hearing. *Id.* at 422, 104 S.Ct. at 1139. Murphy told a counselor in the treatment program that he had committed a rape and murder seven years before. The counselor informed Murphy's probation officer, who decided that the police should be notified. The probation officer arranged a meeting with Murphy at which she told him what she had learned from the counselor and stated that the information indicated that he continued to need treatment. *Id.* at 423–24, 104 S.Ct. at 1140. Murphy admitted committing the rape and murder but contended that he did not need further treatment. The Supreme Court held that Murphy's statement to the probation officer was admissible at a criminal trial even though he had received none of the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Court wrote:

> [T]he general obligation to appear and answer questions truthfully did not in itself convert Murphy's otherwise voluntary statements into compelled ones. In that respect, Murphy was in no better position than the ordinary witness at a trial or before a grand jury who is subpoenaed, sworn to tell the truth, and obligated to answer on the pain of contempt, unless he invokes the privilege and shows that he faces a realistic threat of self-incrimination. The answers of such a witness to questions put to him are not compelled within the meaning of the Fifth Amendment unless

the witness is required to answer over his valid claim of the privilege.

*Murphy,* 465 U.S. at 427, 104 S.Ct. at 1142.

The Court then proceeded to address three exceptions to the general rule that the privilege is not available unless invoked as a ground for refusal to answer. It found them all distinguishable.

The first exception addressed by the *Murphy* Court was the exception for custodial interrogation established in *Miranda.* The Court explained the rationale of *Miranda:*

> Not only is custodial interrogation ordinarily conducted by officers who are acutely aware of the potentially incriminatory nature of the disclosures sought, but also the custodial setting is thought to contain inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely.

*Id.* at 429–30, 104 S.Ct. at 1143 (internal quotation marks and citations omitted). *Miranda* warnings are therefore required "[t]o dissipate the overbearing compulsion ... caused by isolation of a suspect in police custody." *Id.* (internal quotation marks and citations omitted).

The Court noted that four factors had been advanced as requiring analogous protection in Murphy's situation, but it rejected all four, both individually and in combination. The factors were: (1) "[T]he probation officer could compel Murphy's attendance and truthful answers"; (2) "[T]he probation officer consciously sought incriminating evidence"; (3) "Murphy did not expect questions about prior criminal conduct and could not seek counsel before attending the meeting"; and (4) "[T]here were no observers to guard against abuse or trickery." *Id.* at 431–32, 104 S.Ct. at 1144. The Court concluded that custodial interrogation and probation interviews are readily distinguishable for purposes of Fifth Amendment analysis.

> Custodial arrest is said to convey to the suspect a message that he has no choice but to submit to the officers' will and to confess. It is unlikely that a probation interview, arranged by appointment at a

mutually convenient time, would give rise to a similar impression. Moreover, custodial arrest thrusts an individual into an unfamiliar atmosphere or an interrogation environment ... created for no purpose other than to subjugate the individual to the will of his examiner. Many of the psychological ploys discussed in *Miranda* capitalize on the suspect's unfamiliarity with the officers and the environment.... [T]he coercion inherent in custodial interrogation derives in large measure from an interrogator's insinuations that the interrogation will continue until a confession is obtained. Since Murphy was not physically restrained and could have left the office, any compulsion he might have felt from the possibility that terminating the meeting would have led to revocation of probation was not comparable to the pressure on a suspect who is painfully aware that he literally cannot escape a persistent custodial interrogator.

*Id.* at 433, 104 S.Ct. at 1145 (internal quotation marks and citations omitted).

Before proceeding to the Supreme Court's discussion of the two other exceptions to the general rule, we note that the *Murphy* analysis to this point applies with even greater force to Defendant's circumstance. Indeed, the four factors relied upon by the defendant in *Murphy* are either absent in this case or are present in very attenuated form. First, Defendant was not compelled to attend the Probable Cause Hearing; he could have waived it. And even though the hearing was conducted, he was not required to answer questions; he was merely asked if he wished to admit or deny the allegations. Second, the hearing officer's offer to Defendant of an opportunity to admit or deny the allegation cannot properly be characterized as a conscious attempt to seek incriminating evidence. *See State v. Brusenhan,* 78 N.M. 764, 767, 438 P.2d 174, 177 (Ct.App.1968) (probationer's plea to charges at revocation hearing is not coerced testimony). Third, Defendant certainly was not surprised by the nature of the proceeding and was afforded the opportunity to obtain counsel. Fourth, the presence of a neutral hearing officer and the advice of rights by the officer effectively eliminated the opportunity for abuse or trickery, such as misleading Defendant into thinking that his statements would be confidential. *See Miranda,* 384 U.S. at 461, 86 S.Ct. at 1620 (in courts or other official investigations, impartial observers can guard against intimidation or trickery). In any event, the Probable Cause Hearing presented an environment far different from, and far less "coercive" than, the custodial interrogation that is the concern of *Miranda.* *See* 3 William E. Ringel, *Searches & Seizures, Arrests and Confessions* § 26.5(a), at 26–21 (2d ed. May 1988). If the interview in *Murphy* was not so inherently coercive as to require the protections of *Miranda,* then neither was Defendant's Probable Cause Hearing.

The second exception addressed by *Murphy* arises when the authority asking the questions threatens to punish the witness if the privilege against self-incrimination is invoked. 465 U.S. at 434–39, 104 S.Ct. at 1145–48. The leading case establishing this exception is *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), which *Murphy* characterizes as holding "that an individual threatened with discharge from employment for exercising the privilege had not waived it by responding to questions rather than standing on his right to remain silent." 465 U.S. at 435, 104 S.Ct. at 1146.

The *Garrity* exception did not apply in *Murphy* because, even though Murphy was required to answer questions truthfully, the state did nothing to suggest to Murphy that he would be subject to a penalty merely for invoking the privilege against self-incrimination as a ground for refusing to answer questions. The Court noted that Murphy's probation conditions "contained no suggestion that his probation was conditional on his waiving his Fifth Amendment privilege with respect to further criminal prosecution," *id.* at 437, 104 S.Ct. at 1147, and that it was not aware of any case in which the State of Minnesota had "attempted to revoke probation merely because a probationer refused to make nonimmunized disclosures concerning his own criminal conduct," *id.* at 439, 104 S.Ct. at 1148.

In light of the Supreme Court's emphasis on the absence of a penalty for the

simple invocation of the privilege, we understand *Murphy* to say that one cannot rely on the *Garrity* exception just because the person being questioned fears that the evidence presented to the tribunal will cause it to take adverse action against the person unless the person provides countervailing, exculpatory testimony. *See McGautha v. California*, 402 U.S. 183, 213, 91 S.Ct. 1454, 1470, 28 L.Ed.2d 711 (1971) ("It is not contended, nor could it be successfully, that the mere force of evidence is compulsion of the sort forbidden by the privilege [against self-incrimination]."). In other words, even if Defendant held a reasonable belief that the evidence at the Probable Cause Hearing would lead to a finding of probable cause if he did not speak, such a fear of adverse consequences did not constitute the sort of compulsion that would excuse him from invoking his privilege against self-incrimination. This is not a case in which Defendant had been informed that his invocation of the privilege would in itself be a ground for revocation of his parole, in which event he would have been excused from invoking the privilege.

Our reading of *Murphy* thus requires us to reject Defendant's contention that his privilege against self-incrimination was violated because he "cannot be required to choose between his due process right to speak in his own behalf at a revocation hearing and his right against self-incrimination at a subsequent criminal trial." After all, witnesses facing indictment, *see Rogers v. United States*, 340 U.S. 367, 370–71, 71 S.Ct. 438, 440, 95 L.Ed. 344 (1951), or deportation, *see United States ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S. 103, 112–13, 47 S.Ct. 302, 306, 71 L.Ed. 560 (1927), may feel similar incentives to testify, but they are not protected by the privilege against self-incrimination unless they invoke it in response to questioning. *See Murphy*, 465 U.S. at 427, 104 S.Ct. at 1142.

We recognize that Defendant's contention finds support in *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), which held that a defendant's testimony to establish standing at a pretrial suppression hearing could not be admitted against him at trial. The Court spoke of the "undeniable tension" created when one must give up the benefit of one constitutional right in order to invoke another such right and said:

> [The defendant] was obliged either to give up what he believed … to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination. In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another.

*Id.* at 394, 88 S.Ct. at 976.

Yet *Simmons*, although never overruled by the Supreme Court, has not had its reasoning expanded to other arenas. In *McGautha*, 402 U.S. at 211, 91 S.Ct. at 1469, Justice Harlan, who had authored *Simmons*, wrote for the Court that *Simmons* could be justified on the ground that permitting use at trial of a defendant's testimony at a pretrial suppression hearing "created an unacceptable risk of deterring the prosecution of marginal Fourth Amendment claims, thus weakening the efficacy of the exclusionary rule as a sanction for unlawful police behavior." The Court found "open to question" the rationale behind *Simmons* that trial use of suppression-hearing testimony created an impermissible "tension" between constitutional rights. *Id.* at 212, 91 S.Ct. at 1469. *McGautha* upheld the practice of determining guilt and punishment in a death-penalty case by a single trial and single verdict, even though a defendant's "desire to address the jury on punishment [could encourage] waiver of the defendant's privilege to remain silent on the issue of guilt." *Id.* at 213, 91 S.Ct. at 1470. The Court wrote, "Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose." *Id.* at 213, 91 S.Ct. at 1470. Without our recapitulating at length the analysis in *McGautha*, one can still appreciate the force of that holding in the circumstances of the present case. Both here and in *McGautha* the accused may have had an incentive to waive the privilege against self-incrimination and admit guilt in order to obtain a lesser penalty. Yet, surely the pressure on one facing the death

penalty is greater than on one facing revocation of parole. If the pressure in *McGautha* did not create unconstitutional compulsion, there is no such compulsion here. In light of *McGautha*, we find *Simmons* to be unpersuasive authority for Defendant's argument. *See In re Federal Grand Jury Proceedings*, 975 F.2d 1488, 1492–93 (11th Cir.1992) (noting effect of *McGautha* on the authority of *Simmons* ).

▪ Returning now to *Murphy*, we can quickly dispose of the third exception to the general rule requiring invocation of the privilege. This exception has arisen to protect persons required to file returns for the occupational and excise taxes on gamblers. "In recognition of the pervasive criminal regulation of gambling activities and the fact that claiming the privilege in lieu of filing a return would tend to incriminate, the Court has held that the privilege may be exercised by failing to file." *Murphy*, 465 U.S. at 439, 104 S.Ct. at 1148. Unlike the situation facing the gambler-taxpayer, Defendant would have had no problem effectively claiming the privilege at the Probable Cause Hearing. *See id.* at 439–40, 104 S.Ct. at 1148–49.

▪ Defendant also appears to argue that his Probable Cause Hearing statement should be inadmissible at trial for a reason other than the privilege against self-incrimination. He contends that it is "in the state's interest to encourage the probation or parole violator to speak at revocation proceedings.... [I]f a parole violator was precluded from speaking on his own behalf at a revocation proceeding for fear of a future criminal prosecution, neither the defendant's nor the state's interests would be served." Supporting his argument are several decisions holding that if a probation or parole revocation hearing is conducted before the trial of the criminal offense forming the predicate for the revocation, then the state cannot use at trial the accused's testimony at the hearing or any fruits of that testimony. *See, e.g.,*

*People v. Coleman*, 13 Cal.3d 867, 120 Cal. Rptr. 384, 533 P.2d 1024 (1975) (en banc) (the leading case); *McCracken v. Corey*, 612 P.2d 990 (Alaska 1980); *People v. Rocha*, 86 Mich. App. 497, 272 N.W.2d 699 (1978); *State v. Hass*, 268 N.W.2d 456 (N.D.1978); *State v. DeLomba*, 117 R.I. 673, 370 A.2d 1273 (1977); *State v. Begins*, 147 Vt. 295, 514 A.2d 719 (1986); *State v. Evans*, 77 Wis.2d 225, 252 N.W.2d 664 (1977); *cf. State v. Boyd*, 128 Ariz. 381, 625 P.2d 970 (Ct.App.1981) (applying state rule of criminal procedure).[1] On the other hand, other courts have rejected the *Coleman* line of cases. *See, e.g., People v. Lee*, 88 Ill.App.3d 396, 43 Ill.Dec. 646, 410 N.E.2d 646 (1980); *State v. Wahlert*, 379 N.W.2d 10 (Iowa 1985); *Dail v. State*, 96 Nev. 435, 610 P.2d 1193 (1980); *State v. Randall*, 27 Or.App. 869, 557 P.2d 1386 (1976), *review denied* (June 1, 1977).

We need not decide which line of authority is more persuasive, because we could not adopt the rationale of *Coleman* in this case even if we found it persuasive. None of the decisions immunizing revocation-hearing testimony rests on constitutional grounds. The courts based their holdings on their supervisory authority over the courts. Our Supreme Court likewise possesses such authority, *see* N.M. Const. art. VI, § 3, but it has exercised its authority with respect to the admissibility of evidence through promulgation of rules of evidence which have only prospective effect. *See Marquez v. Wylie*, 78 N.M. 544, 434 P.2d 69 (1967) (N.M. Const. art. IV, § 34 forbids application of new Supreme Court rule of evidence or procedure to case pending on effective date of rule). The Supreme Court may wish to adopt a rule following *Coleman* for future cases, but the rule could not apply here.

Moreover, we are aware of no decisions going as far as Defendant would like to take us. His inculpatory statement was not at a revocation hearing but at a preliminary pa-

---

1. Although most of these opinions provide that the prosecutor may use the accused's revocation-hearing testimony to impeach the accused at trial, *e.g.*, *Coleman*, 120 Cal.Rptr. at 404–05, 533 P.2d at 1044–45, it is unclear how the prosecutor can become informed about the hearing testimony without jeopardizing the prosecution on the

ground that the immunized testimony was used to prepare for trial. *See United States v. North*, 910 F.2d 843, 856–60 (D.C.Cir.), *revised on rehearing*, 920 F.2d 940 (D.C.Cir.1990), *cert. denied*, 500 U.S. 941, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991).

role revocation hearing. *Coleman* itself did not extend its policy concerns to such a hearing. The California court 'wrote:

> We ... wish to make clear that this exclusionary rule does not apply to any proceedings other than the formal, dispositive probation revocation hearing....

> ... [I]f the probationer wishes to be heard at his preliminary hearing or equivalent proceeding, that is his right. But since no dispositive action is taken at such a hearing neither the pressure on the probationer to make full disclosure of his conduct, nor the interest of the state in having him make such disclosure, is sufficiently compelling to warrant the procedural burden of applying the exclusionary rule to testimony of a probationer adduced at this early stage of the probation revocation process.

*Id.* at 405–06, 533 P.2d at 1045–46. Thus, we will not adopt Defendant's policy arguments as grounds for reversal.

## SUFFICIENCY OF THE EVIDENCE

Defendant's contention that there was insufficient evidence that he possessed cocaine is predicated on the inadmissibility at trial of his Probable Cause Hearing statement. On appeal, however, we review the sufficiency of the evidence based on the evidence admitted at trial, even if some of that evidence should not have been admitted. *See State v. Post,* 109 N.M. 177, 181–82, 783 P.2d 487, 491–92 (Ct.App.1989). In any event, we have ruled that Defendant's statement was admissible. The evidence at trial was sufficient to sustain the verdict. *See State v. Rickard,* 118 N.M. 586, 587, 884 P.2d 477, 478 (1994).

## CONCLUSION

For the above reasons we affirm the judgment and sentence below.

IT IS SO ORDERED.

DONNELLY and BLACK, JJ., concur.