HECTOR WALTER DAIL, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 11858

May 15, 1980                                          610 P.2d 1193

*Morgan D. Harris*, Public Defender and *Gary H. Lieberman*, Deputy Public Defender, Clark County, for Appellant.

*Richard H. Bryan*, Attorney General, Carson City; *Robert J. Miller*, District Attorney and *James Tufteland*, Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, MANOUKIAN, J.:

Dail appeals from an order revoking probation which had been granted following the imposition in February of 1978 of a five year sentence upon a plea of guilty to a charge of burglary, a felony. NRS 205.060. Upon this appeal we must determine whether conducting a probation revocation hearing in advance of trial, based on allegations which also provide the basis for independent criminal charges, denies procedural due process or violates public policy. We are also asked to ascertain whether there was sufficient evidence presented to warrant the revocation of probation.

Beyond the general terms of his probation, a special condition provided that appellant not use, purchase, possess, give, sell or administer any narcotic drugs. In March of 1979 the Clark County District Attorney commenced proceedings to revoke appellant's probation based upon facts which also served as the basis for the independent felony charge of possession of a controlled substance with intent to sell. NRS 453.337. The trial of the criminal charges had not yet occurred. Appellant made timely objection to the hearing on the ground again raised in this appeal.

At the hearing on the motion to revoke probation, the state presented several witnesses to substantiate the violations by appellant. One witness, a hotel security guard, testified that he observed appellant and another person in the men's room and noticed appellant holding a small packet of a white powdery substance, and a second person with currency in his hand. The security officer and his partner attempted to retrieve the package and a brief scuffle ensued. At that time, the second suspect with appellant was in possession of the packet. After both suspects were detained, the security officer found a compact case containing fifteen white packets of powder in a wax container and items of drug paraphernalia. It appears that the compact was retrieved from the appellant. A subsequent analysis of the packets indicated that they contained the controlled substances phencyclidine and methaqualone.

Appellant did not testify at the violation hearing alleging that he was deterred from doing so by the desire to preserve his

fifth amendment privilege against self-incrimination at his subsequent criminal trial. The trial court was satisfied that appellant was selling narcotics and revoked the imposed probation.

*1. Revocation Preceding Trial.*

Appellant's initial contention is one of first impression in this state and one in which there is a significant split of authority or policy throughout the country. He contends that to permit the holding of a probation violation hearing prior to the trial of the underlying criminal charge forces an alleged violator to make a constitutionally unfair election of either foregoing his right to take the stand and to speak in his own behalf at the revocation hearing, or testifying at such hearing and facing the prospect that the evidence elicited through him might be used against him at or in the subsequent criminal trial. We disagree.

We believe it significant that none of the authorities on this subject consider this question to be of constitutional import. The cases either reject the concept in toto, grant the probationer use immunity at the violation hearing, or require that the revocation hearing be held subsequent to the related criminal trial. Recognizably, there is a tension between a probationer's due process right to be heard and his right against self-incrimination. People v. Coleman, 533 P.2d 1024, 1030–34 (Cal. 1975). *See* Ryan v. State of Montana, 580 F.2d 988, 991 (9th Cir. 1978). A probationer or a defendant faces many hard decisions in the conduct of his defense. As already observed, however, the conflict in this situation is not of constitutional magnitude. *See* Baxter v. Palmigiano, 425 U.S. 308 (1976); Ryan v. State of Montana, 580 F.2d at 991; People v. Coleman, 533 P.2d at 1039; People v. Woodall, 358 N.E.2d 1267 (Ill.App. 1976). We have recognized that "[p]robation is an integral part of the penal system, calculated to provide a period of grace in order to assist in the rehabilitation of an eligible offender . . . ." Seim v. State, 95 Nev. 89, 93, 590 P.2d 1152, 1154 (1979). Both society and the probationer have a keen interest in his restoration to a normal and useful life and both are desirous that the probationer be treated with basic fairness. Jennings v. State, 89 Nev. 297, 300, 511 P.2d 1048, 1050 (1973). Nevertheless, upon a balancing of the respective interests of public safety with the goal and interest of rehabilitation of the probationer, we perceive no unconstitutional dilemma for the alleged violator who desires to defend himself or present mitigating evidence at a revocation proceeding. Appellant's predicament does not run afoul of constitutional due process. Probation revocation proceedings are not part of a

criminal prosecution and "the full panoply of rights" in such instances does not apply. Morrissey v. Brewer, 408 U.S. 471, 480 (1972). *See also* Anaya v. State, 96 Nev. 119, 606 P.2d 156 (1980).

The finding of no constitutional conflict leaves this court with a policy determination. Some state courts have recognized the tension created in this situation and, with the use of their supervisory powers, have eased the tension. *See* People v. Coleman, 533 P.2d 1024 (Cal. 1975); People v. Rocha, 272 N.W.2d 699 (Mich.App. 1978); State v. Hass, 268 N.W.2d 456 (N.D. 1978); State v. DeLomba, 370 A.2d 1273 (R.I. 1977); State v. Evans, 252 N.W.2d 664 (Wis. 1977). *See also* Shimabuku v. Britton, 503 F.2d 38 (10th Cir. 1974); Avant v. Clifford, 341 A.2d 629 (N.J. 1975). The California Supreme Court in *Coleman* delineated several considerations and favored postponed revocation proceedings or use immunity in the event the violation hearing preceded the related criminal trial. The court referred to the due process right to be heard at the revocation hearing. *See* Morrissey v. Brewer, 408 U.S. 471 (1972). The thrust of that holding was "to assure informed, intelligent and just revocation decisions." People v. Coleman, 533 P.2d at 1031. The court in *Coleman* also reasoned that the rehabilitation opportunities are to be enhanced by treating probationers with basic fairness and that these policies are said to be deterred by the possibility of self-incrimination. *Id.* Finally, with regard to the incrimination aspect, it was thought that the government should be required to shoulder the entire load at the criminal trial and a defendant should be presumed innocent until the contrary is proven. *Id.* at 1032–34.

The remedy fashioned in *Coleman* was to disallow a probationer's testimony during the revocation hearing from being used during the criminal trial. Nor could the fruits of such testimony be used, *id.* at 1042–43, absent a need for impeachment based upon clearly inconsistent testimony. *Id.* at 1044.

Other courts which have been confronted with this argument have held that there is no chilling effect of a defendant's right against self-incrimination by the holding of a violation proceeding prior to trial on related criminal charges. *See* People v. Carr, 524 P.2d 301 (Colo. 1974); Borges v. State, 249 So.2d 513 (Fla.App. 1971); State v. Ryan, 533 P.2d 1076 (Mont. 1975); State v. Kartman, 224 N.W.2d 753 (Neb. 1975); State v. Randall, 557 P.2d 1386 (Or.App. 1976); Commonwealth v. Kates, 305 A.2d 701 (Pa. 1973); State v. Cyganowski, 584 P.2d 426 (Wash.App. 1978). *See also* Flint v. Mullen, 499 F.2d 100 (1st Cir.), *cert. denied,* 419 U.S. 1026 (1974); United States v.

Markovich, 348 F.2d 238 (2d Cir. 1965); Ryan v. State of Montana, 580 F.2d 988 (9th Cir. 1978).[1] These decisions have recognized that a defendant has many difficult decisions of strategy to make and that the conflict is not of constitutional dimension. Additionally, it was reasoned that a court's discretion to impose an appropriate sanction against a probationer who appears not to be amenable to the probationary order should not be fettered; both the state and the probationer have an interest in resolving the probation question while the evidence is fresh; and, a defendant may pose a high-risk to society by being at liberty. Commonwealth v. Kates, 305 A.2d 707-08; State v. Cyganowski, 584 P.2d at 428.

There exists a number of additional cogent reasons why we are unable to subscribe to the holding in People v. Coleman, 533 P.2d 1024, and cases of similar import. First, we should exercise judicial restraint and defer to the legislature the determination of whether public policy considerations, as distinguished from constitutional mandates, dictate a modification of revocation procedures. Second, our existing revocation procedures do not substantially undermine the probationer's opportunity to present an adequate defense. *See* Melson v. Sard, 402 F.2d 653 (D.C.Cir. 1968). A probationer generally has access to counsel and has the right to call and cross examine witnesses and present evidence in defense and mitigation of the charge.[2] NRS 176.217; *see* Anaya v. State, 96 Nev. 119, 606 P.2d 156 (1980). Third, as a procedural benefit to the probationer, in some cases he may profit by knowing the status of his sentence on the initial criminal charges so that if he is successfully prosecuted on the second charge the court, where permissible, can consider imposing a concurrent or reduced sentence. *See* Ryan v. State of Montana, 580 F.2d at 994.

Except in a situation in which the state institutes revocation proceedings as a vehicle for an investigation directed solely toward obtaining information to be used in a subsequent criminal trial, United States v. Consuelo-Gonzalez, 521 F.2d 259, 267 (9th Cir. 1975), or a situation where the proceedings were

[1]The federal courts have generally recognized the right of states to supervise their own systems when, as here, there is no constitutional conflict, even when the federal court prefers a certain method. Ryan v. State of Montana, 580 F.2d at 993-94; *see* Flint v. Mullen, 499 F.2d 100 (1st Cir.), *cert. denied,* 419 U.S. 1026 (1974).

[2]If the probationer elects to invoke the privilege against self-incrimination at the revocation hearing, no sanction or punishment results automatically from the exercise of that privilege and impermissible compulsion is lacking. Ryan v. State of Montana, 580 F.2d at 992.

commenced without sufficient evidence to support the probation violation charge, Ryan v. State of Montana, 580 F.2d at 991, we decline to require that a criminal trial be conducted prior to a probation revocation hearing. Here, the fact that the probation revocation hearing preceded the related criminal trial, violated neither appellant's due process rights nor public policy.

*2. Sufficiency of the Evidence.*

Appellant argues that the "specific quantum of proof necessary for revocation" has not been adequately specified in Nevada and that the proof should be convincing by objective standards and not in the "unfettered discretion of the trial court." He has asked us to reject the "reasonably satisfied" standard enunciated in Lewis v. State, 90 Nev. 436, 529 P.2d 796 (1974), in favor of a preponderance of the evidence standard adopted in several other jurisdictions. *See, e.g.,* United States v. Iannece, 405 F.Supp. 599 (E.D.Pa. 1975); Henderson v. State, 568 P.2d 297 (Okla.Crim.App. 1977). We are unpersuaded.

The United States Supreme Court made it clear that a revocation hearing is not to be equated with a criminal prosecution but, rather, is a narrow inquiry in which the process should be flexible. *See* Gagnon v. Scarpelli, 411 U.S. 778 (1973); Morrissey v. Brewer, 408 U.S. 471 (1972). *Accord,* Anaya v. State, 96 Nev. 119, 606 P.2d 156 (1980). Clearly conviction is not a precondition to probation revocation, United States v. Markovich, 348 F.2d 238, 240 (2d Cir. 1965), and here, because the unrefuted evidence presented at the hearing was reliable and obviously sufficient to satisfy the trial court that Dail had violated the terms of his probation, we adhere to the rule announced in Lewis v. State, 90 Nev. 436, 529 P.2d 796 (1974). Our *Lewis* standard represents the weight of authority in this country and, as well, is consistent with due process and fairness.[3] A greater standard would often result in high-risk individuals remaining at liberty, consequently against the public interest. *See* Morrissey v. Brewer, 408 U.S. at 483. It would also hamper the effective operations of our trial courts, by requiring more formal and plenary violation proceedings. This

---

[3]In Lewis v. State, 90 Nev. 436, 529 P.2d 796 (1974), we held that "[t]he evidence must reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation." *Id.* at 438, 529 P.2d at 797.

would be contrary to our evidence code which exempts revocation proceedings from its general application. NRS 47.020(3)(c).

Although the Supreme Court has not specifically addressed the applicable standard of proof in probation revocation hearings, its opinion in Gagnon v. Scarpelli, 411 U.S. at 789–90, n.12, indicates that the Court believes that probation could be revoked on less than a beyond a reasonable doubt standard. Here the court thought it was obvious that appellant was selling or possessing narcotics. We will not disturb the trial court's discretion in the absence of a clear showing of abuse.

We affirm the order revoking probation.

MOWBRAY, C. J., and THOMPSON and BATJER, JJ., concur.

GUNDERSON, J., concurring:
I concur in the result.