134 Nev., Advance Opinion 52

IN THE SUPREME COURT OF THE STATE OF NEVADA

| KAMESHA JOANN COOPER,<br>Appellant,<br>vs.<br>THE STATE OF NEVADA,<br>Respondent. | No. 71402<br><br>**FILED**<br><br>JUL 2 6 2018<br><br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY_____<br>CHIEF DEPUTY CLERK |

Appeal from a district court's revocation of probation. First Judicial District Court, Carson City; James E. Wilson, Judge.

*Reversed and remanded.*

Karin L. Kreizenbeck, Public Defender, and Sally S. deSoto, Chief Appellate Deputy Public Defender, Carson City,
for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; Jason D. Woodbury, District Attorney, and Kristin Luis and Meredith N. Beresford, Deputy District Attorneys, Carson City,
for Respondent.

_____

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, STIGLICH, J.:

We have long recognized that the Fifth Amendment is not violated when a probationer is faced with the difficult choice of testifying at a revocation hearing or remaining silent so as not to incriminate herself should the alleged probation violation result in subsequent criminal prosecution. In this opinion we consider whether to adopt a rule of

18-28619

admissibility that would limit the use of the probationer's testimony in a subsequent criminal proceeding. Having considered the compelling reasons behind adopting such a rule, we choose to invoke our supervisory powers to address the tension surrounding a probationer's testimony at a revocation hearing and adopt an admissibility rule in the interest of basic fairness and the administration of justice. Accordingly, we reverse the district court's revocation of probation and remand for proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

In March 2014, appellant Kamesha Cooper was placed on probation for a term not to exceed five years. In July 2016, Cooper was arrested, and a criminal complaint was filed alleging possession of false identification and concealment or destruction of evidence in the commission of a felony. The charges were subsequently dismissed without prejudice because the State needed more time to investigate and develop the case.

Meanwhile, the Division of Parole and Probation filed two reports with the district court alleging various probation violations, including a violation for failure to obey laws that was based on Cooper's arrest. At the revocation hearing, defense counsel indicated that Cooper would concede the fact that she had been arrested but requested that the district court not allow testimony related to the arrest because Cooper was placed in a tenuous position of having to choose between her right to present mitigating evidence at the revocation hearing and her right against self-incrimination regarding the potential charges. The district court opined that Cooper could be prejudiced at the revocation hearing if she did not testify and opted to proceed with evidence of Cooper's other alleged violations due to Fifth Amendment concerns. However, after the district court heard the evidence for Cooper's other alleged violations, it noted that

SUPREME COURT
OF
NEVADA

(O) 1947A

"the evidence at this point is close to the line on whether she would be revoked or not" and allowed testimony related to Cooper's arrest. The district court acknowledged that Cooper was "either going to be prejudiced here by not testifying or prejudiced potentially in [the county where she was arrested] and potentially in other jurisdiction[s] if she does testify." Nevertheless, the district court took testimony from the arresting officer and the district attorney's office regarding the circumstances of the arrest. On the advice of counsel, Cooper did not testify to the circumstances of the arrest. Based on testimony regarding the arrest, the district court found sufficient evidence to support probation violations of intoxicants, laws, and travel and revoked Cooper's probation. This appeal was taken.

## DISCUSSION

Because probation revocations are not criminal prosecutions, probationers are not afforded "the full panoply of constitutional protections" to which a criminal defendant is entitled. *Anaya v. State*, 96 Nev. 119, 122, 606 P.2d 156, 157 (1980). However, revocation proceedings "may very well result in a loss of liberty, thereby triggering the flexible but fundamental protections of the due process clause of the Fourteenth Amendment." *Id.* The Supreme Court has held that, at a minimum, due process at a revocation hearing requires a probationer be given "an opportunity to be heard and to show . . . that he did not violate the conditions, or, . . . that circumstances in mitigation suggest that the violation does not warrant revocation." *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972).

The issue before us concerns the tension at a revocation hearing between two important rights: the due process right to have an opportunity to be heard and present mitigating evidence and the right against self-incrimination as to pending or potential criminal charges related to the alleged probation violation. We are not unfamiliar with the tension at issue,

SUPREME COURT
OF
NEVADA

(O) 1947A

as we have previously contemplated this very dilemma in *Dail v. State*, 96 Nev. 435, 610 P.2d 1193 (1980). In that case, we considered whether:

> [T]o permit the holding of a probation violation hearing prior to the trial of the underlying criminal charge forces an alleged violator to make a *constitutionally unfair* election of either foregoing his right to take the stand and to speak in his own behalf at the revocation hearing, or testifying at such hearing and facing the prospect that the evidence elicited through him might be used against him at or in the subsequent criminal trial.

*Id.* at 437, 610 P.2d at 1194 (emphasis added). We held that the conflict between the two rights was not one of constitutional import and that the lack of a constitutional conflict "le[ft] this court with a policy determination." *Id.* at 438, 610 P.2d at 1194. After examining a split in authority between those jurisdictions that utilized court supervisory powers to fashion a remedy and those that found no chilling effect by requiring the probationer to decide between the two rights, we declined to establish a rule or requirement. *Id.* at 438-40, 610 P.2d 1194-96. Instead, we elected to "exercise judicial restraint and defer to the legislature the determination of whether public policy considerations, as distinguished from constitutional mandates, dictate a modification of revocation procedures." *Id.* at 439, 610 P.2d at 1195.[1]

---

[1]We also noted two other reasons for not adopting a rule or requirement: "our existing revocation procedures do not substantially undermine the probationer's opportunity to present an adequate defense," and "in some cases [the probationer] may profit by knowing the status of his sentence on the initial criminal charges so that if he is successfully prosecuted on the second charge the court . . . can consider imposing a concurrent or reduced sentence." *Id.* at 439, 610 P.2d at 1195-96.

Now, nearly 40 years later, this dilemma still exists for probationers at a revocation hearing to choose between the same two important rights, and there has been no undertaking to address this tension. While this court recognizes the gravity of exercising judicial restraint and deferring to the Legislature, we find ourselves in a situation akin to one the Rhode Island Supreme Court encountered in *State v. DeLomba*, 370 A.2d 1273 (R.I. 1977). There, the court had initially been reluctant to adopt a rule to ease the same tension at issue in this case and deferred the matter to the state legislature. *Id.* at 1275 ("[W]e did not close the door to future consideration of the argument now advanced. Instead, we deferred, at least for the moment, to the Legislature the determination of whether public policy considerations, as distinguished from constitutional imperatives, dictated an alteration of revocation procedures."). However, after three years of inactivity, the Rhode Island Supreme Court decided that no "useful purpose would be served by [its] continued abstention" and utilized its supervisory jurisdiction to hold that a probationer must be given use and derivative use immunity for any testimony given at the revocation hearing or that the revocation hearing must be postponed until after the criminal trial. *Id.* at 1275-76. We, like the Rhode Island Supreme Court, initially deferred addressing this issue but, decades later, find no useful purpose in continued abstention.[2]

We emphasize that we affirm the conclusion in *Dail* that the tension at issue is not one of constitutional import. *See Dail*, 96 Nev. at 437, 610 P.2d at 1194 ("[W]e perceive no unconstitutional dilemma for the alleged violator who desires to defend himself or present mitigating

---

[2]Nothing in this opinion precludes the Legislature from enacting a statute that addresses the tension at issue.

evidence at a revocation proceeding. Appellant's predicament does not run afoul of constitutional due process."). It is, instead, one involving public policy and fairness. And it is with these tenets in mind that we now consider the dilemma a probationer faces at a revocation hearing involving two constitutional rights—the "right to be heard and [the] right against self-incrimination." *Id.*

"The principal policy underlying a probationer's right to an opportunity to be heard at a revocation hearing . . . is to assure *informed, intelligent and just revocation decisions.*" *People v. Coleman*, 533 P.2d 1024, 1031 (Cal. 1975) (emphasis added). The district court has an interest in exercising its discretion in an informed and accurate manner. *See* NRS 176A.630 (providing the district court with disposition options after a determination that probation was violated). The probationer and the State also have an interest in "the informed use of discretion—the probationer . . . to insure that his liberty is not unjustifiably taken away and the State to make certain that it is neither unnecessarily interrupting a successful effort at rehabilitation nor imprudently prejudicing the safety of the community." *Gagnon*, 411 U.S. at 785. Indeed, the Supreme Court has recognized society's interest in not having supervised release rescinded "because of erroneous information or because of an erroneous evaluation of the need to revoke [supervised release], given the breach of [probation] conditions." *Morrissey*, 408 U.S. at 484. In addition, society has an interest in treating a supervised individual with basic fairness so as to improve the probability of rehabilitation. *Id.*

These interests "are seriously undermined when a probationer is deterred by the possibility of self-incrimination from taking advantage of his right to be heard at his probation revocation hearing." *Coleman*, 533

P.2d at 1031. Understandably a probationer might feel that the opportunity to be heard is "more illusory than real" when the probationer must endanger the chance of acquittal at a future trial in order to explain his or her actions while on probation. *Id.* And the probationer's explanation for his or her actions, testimony that "is likely to be more readily accepted, and hence more useful to the court," will likely be withheld due to the "probationer's fear of self-incrimination, since mitigating evidence often involves damaging factual admissions coupled with more or less compelling moral excuses." *Id.*

On the other hand, the policies underlying the right against self-incrimination are challenged when a probationer chooses to risk self-incrimination and to testify at a probation revocation hearing. At a criminal trial, the prosecution alone bears the burden of presenting sufficient evidence to establish the guilt of a defendant who is presumed innocent, and that burden must be met *before* a defendant decides to exercise the right to testify in his or her own behalf or to remain silent. *Id.* at 1032. That burden is "substantially lightened if the prosecution is allowed to take advantage of the defendant's testimony at a prior probation revocation hearing." *Id.* A probationer ends up between the proverbial rock and a hard place as the chances of revocation may be enhanced when the probationer, out of fear of self-incrimination, chooses not to testify while at the same time the chances of a future conviction may also be enhanced when the probationer testifies, thus becoming "one of the prosecution's principal witnesses in its case in chief." *Id.* at 1033.

By balancing the interests and policies behind these two constitutional rights, we are convinced that the tension at issue presents an

unfair dilemma for the probationer.[3]  "[B]asic fairness demands that a defendant must not be forced to forfeit one constitutional right to preserve another constitutional right." *Barker v. Commonwealth*, 379 S.W.3d 116, 123 (Ky. 2012); *see also Simmons v. United States*, 390 U.S. 377, 393-94 (1968) (considering a defendant's choice between testifying at a hearing on a motion to suppress and waiving his right against self-incrimination or forfeiting the Fourth Amendment claim and "find[ing] it intolerable that one constitutional right should have to be surrendered in order to assert another").  Probationers in situations similar to Cooper's are faced with asserting their due process rights to be heard and present mitigating testimony, but only by forfeiting their right against self-incrimination. Indeed, the district court noted this unfairness when it remarked that either Cooper was going to be prejudiced in the revocation hearing by not testifying or potentially in another court on charges related to the arrest if she did testify.  This unfairness, "even if not so severe as to rise to the level of a constitutional deprivation, is nevertheless so real and substantial that it calls for action by [the court] on public policy grounds and in furtherance of [the court's] responsibility to assure a sound and enlightened administration of justice." *DeLomba*, 370 A.2d at 1275.

---

[3]While we held in *Dail* that our "revocation procedures do not substantially undermine the probationer's opportunity to present an adequate defense" and that the probationer could possibly benefit from knowing the outcome of his revocation proceeding before any subsequent criminal trial, we note that we did not fully consider fairness to the probationer or public policy concerns, as we do now. *Dail*, 96 Nev. at 439, 610 P.2d at 1195.

SUPREME COURT
OF
NEVADA

(O) 1947A

Thus, to ensure basic fairness and to further the administration of justice, we invoke our inherent supervisory power to adopt a rule to ease this tension. *See State v. Second Judicial Dist. Court (Marshall)*, 116 Nev. 953, 962-63, 11 P.3d 1209, 1214-15 (2000) ("[T]his court indisputably possesses inherent power to prescribe rules necessary or desirable to handle the judicial functioning of the courts."); *see also Halverson v. Hardcastle*, 123 Nev. 245, 261-62, 266, 163 P.3d 428, 439-41, 443 (2007) (recognizing this court's supervisory authority to administrate rules and procedures "when reasonable and necessary for the administration of justice" (internal quotation marks omitted)).[4] We recognize that there are limitations on this court's use of inherent power, as "inherent power should be exercised only when established methods fail or in an emergency situation." *Halverson*, 123 Nev. at 263, 163 P.3d at 441. However, it is clear to us that established methods have failed to address the quandary faced by Cooper and other probationers in her situation and that invocation of our inherent power to create a rule addressing the issue is "reasonable and necessary for the

---

[4]The dissent criticizes the adoption of an exclusionary rule not statutorily or constitutionally required. Neither party argues that this court is without the power to create a rule; indeed, the State argues in its brief that this court could develop an evidentiary rule to address the tension at issue. And this court has in the past developed rules when the need has arisen, even when not mandated by a statute or the constitution. *See, e.g., State v. Eighth Judicial Dist. Court (Romano)*, 120 Nev. 613, 623, 97 P.3d 594, 601 (2004) (holding that the State cannot introduce expert evidence when a sexual assault victim has refused to submit to a psychological examination ordered by the district court), *overruled by Abbott v. State*, 122 Nev. 715, 718, 138 P.3d 462, 464 (2006).

  

administration of justice." *Id.* at 261, 163 P.3d at 440 (internal quotation marks and emphasis omitted).

Therefore, we join our sister courts in adopting a rule to limit the use of a probationer's testimony given at a probation revocation hearing.[5] *See id.* at 438, 610 P.2d at 1194-95 (listing jurisdictions that had adopted use and derivative use immunity for a probationer's testimony or the option of proceeding with the criminal trial before the revocation hearing); *see also McCracken v. Corey*, 612 P.2d 990, 997-98 (Alaska 1980) (providing for an exclusionary rule of evidence or testimony presented at a probation revocation hearing and any "fruits of the . . . revocation hearing"); *State v. Boyd*, 625 P.2d 970, 972 (Ariz. Ct. App. 1981) (referencing state rules of criminal procedure that limit the use of a probationer's testimony at a probation revocation hearing to impeachment at a trial); *State v. Heath*, 343 So. 2d 13, 16 (Fla. 1977) (recognizing the right against self-incrimination applies to specific conduct and circumstances related to a separate crime); *Barker*, 379 S.W.3d at 127-28; *State v. Begins*, 514 A.2d 719, 722-23 (Vt. 1986) (adopting use and derivative use immunity).

---

[5]Cooper urges this court to find error where the district court proceeds with a probation violation hearing prior to the resolution of criminal proceedings on the same facts. As in *Dail*, "we decline to *require* that a criminal trial be conducted prior to a probation revocation hearing." *Dail*, 96 Nev. 439-40, 610 P.2d at 1196 (emphasis added). Such a requirement would not best serve the interests of the State and the probationer to resolve the allegation of a probation violation expeditiously and would unduly fetter the district court's "discretion to impose an appropriate sanction against a probationer who appears not to be amenable to the probationary order." *Id.* at 438-39, 610 P.2d at 1195.

While some jurisdictions have opted to frame this remedy as a rule of immunity, we consider it a rule of admissibility, akin to the rule created in NRS 47.090, wherein testimony by a defendant at a suppression hearing "is not admissible against the accused on the issue of guilt at the trial." Thus, it is in the interest of basic fairness and in furtherance of our responsibility in the administration of justice that we declare:

> [U]pon timely objection the testimony of a probationer at a probation revocation hearing held prior to the disposition of criminal charges arising out of the alleged violation of the conditions of his probation, and any evidence derived from such testimony, is inadmissible against the probationer during subsequent proceedings on the related criminal charges, save for purposes of impeachment or rebuttal where the probationer's revocation hearing testimony or evidence derived therefrom and his testimony on direct examination at the criminal proceeding are so clearly inconsistent as to warrant the trial court's admission of the revocation hearing testimony or its fruit in order to reveal to the trier of fact the probability that the probationer has committed perjury at either the trial or the revocation hearing.

*Coleman*, 533 P.2d at 1042. At the probation revocation hearing, the district court should advise probationers that any testimony related to separate crimes at issue at the hearing cannot be substantively used in a subsequent criminal proceeding in Nevada except for purposes of impeachment or rebuttal.[6]

---

[6]As discussed in *Coleman*, the rule may not be expanded by a probationer but serves to protect testimony related to circumstances at issue at the revocation hearing. *Id.* at 1042-43. Additionally, the rule does not alter jurisprudence regarding the presentation of evidence derived from

 

We believe this rule balances the probationer's and the State's interests at the probation revocation hearing. Our belief is only strengthened when we consider that such a rule would not prejudice the State. Indeed, not only did the State fail to identify any prejudice in its briefing, it failed to identify any prejudice when asked directly at oral argument. The rule also advances the district courts' interest in the informed exercise of discretion pursuant to NRS 176A.630. As noted, the Legislature has adopted a similar rule in the context of hearings on a motion to suppress. *See* NRS 47.090. And this rule will remove any improper incentive to proceed with probation revocation hearings "as a way to gain an unfair advantage at a subsequent criminal trial." *Begins*, 514 A.2d at 723. Moreover, the probationer is not shielded from prosecution for perjury or similar crimes resulting from testimony or evidence produced either at the probation violation hearing or at the criminal trial as "[t]he protection extended does not give [the probationer] a right to lie in his own behalf." *DeLomba*, 370 A.2d at 1276.

In the instant matter, Cooper did not testify at the probation violation hearing as to the circumstances surrounding her alleged law violation. We need not conjecture whether her decision was one based on her desire to preserve her privilege against self-incrimination. She clearly acknowledged that she had been advised by counsel not to testify regarding the circumstances of her arrest and that she felt she could not go further in defending her actions without risking her right against self-incrimination.

---

an independent source. *See generally Kastigar v. United States*, 406 U.S. 441, 461 (1972) (reaffirming the application of the independent source doctrine in the Fifth Amendment context).

 

The district court acknowledged that it was proceeding in spite of Cooper's quandary.[7]

In accordance with our discussion, the order revoking probation is reversed, and this matter is remanded to the district court for further proceedings consistent with this opinion.

_____, J.
Stiglich

We concur:

_____, C.J.
Douglas

_____, J.
Cherry

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

---

[7]The dissent remarks on the district court's attempt to avoid any entanglement with Cooper's right against self-incrimination by bifurcating the hearing. We agree the district court acted laudably in its efforts, but in the absence of the rule adopted in this opinion, the district court was unable to ameliorate Cooper's dilemma.

 

PICKERING, J., dissenting:

I respectfully dissent, for three reasons. First, this court's "supervisory powers" do not authorize it, in deciding an individual case, to promulgate new evidentiary exclusionary rules that are neither statutorily nor constitutionally based. Second, even if the court had such broad supervisory powers, this case is a poor candidate for their exercise, given that Cooper asked the district court for a continuance, not a ruling she could testify and have her testimony excluded in a later proceeding, and with good reason: Cooper faced possible federal or out-of-state prosecution for the offense giving rise to her probation revocation proceeding, and a Nevada state court's promise to exclude evidence in future proceedings lacks extra-jurisdictional force. Finally, *Dail v. State*, 96 Nev. 435, 610 P.2d 1193 (1980), rejected the exclusionary rule the majority today adopts. Stare decisis counsels against overruling precedent unless the precedent has proved unworkable or badly reasoned and, as the district court's expert handling of Cooper's probation revocation hearing illustrates, *Dail* is functioning well and should not be overruled.

1. *The court's "supervisory powers" do not authorize it to promulgate exclusionary rules that are not statutorily or constitutionally based*

Nevada adopted its evidence code in 1971. *See* 1971 Nev. Stat., ch. 402. In doing so, Nevada adopted the broad rule of admissibility stated in NRS 48.025(1), which declares: "All relevant evidence is admissible, except: (a) As otherwise provided in this title [the Nevada Evidence Code; or] (b) As limited by the Constitution of the United States or of the State of Nevada." Like its federal counterpart, Federal Rule of Evidence 402, NRS 48.025(1) "abolished the prior decisional law of evidence" such that, from the time of its adoption forward, "courts could not use their common law powers to create new exclusionary rules except through constitutional

SUPREME COURT
OF
NEVADA

(O) 1947A

interpretation, statutory amendment [or interpretation], or the Supreme Court's [formal] rulemaking powers." 22A Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence* § 5199, at 95 (2d ed. 2014).[1]

The majority acknowledges that its new exclusionary rule is not statutorily based or constitutionally required. Maj. op., *supra*, at 4, 9. Lacking statutory or constitutional predicate, it invokes its "supervisory powers" to justify creating a new exclusionary rule. *Id.* at 9. But without a basis in statute or constitutional text, this new rule conflicts with NRS 48.025(1)'s declaration that "all relevant evidence is admissible" and, ultimately, with the point of having a uniform evidence code. *See* 22A Charles Alan Wright & Kenneth W. Graham, Jr., *supra*, § 5199, at 99 & n.26 (criticizing the California Supreme Court for "continu[ing] to churn out new exclusionary rules despite the adoption of the Evidence Code" and for "using 'supervisory power' to [judicially] create [an exclusionary] rule barring use of probationer's testimony at a revocation hearing against him at a later criminal trial," citing *People v. Coleman*, 533 P.2d 1024 (Cal. 1975)). It is unwise to invoke supervisory powers to promulgate evidentiary

---

[1]NRS 2.120 authorizes this court to adopt rules by formal rule-making procedures, which this court has construed to require public notice and hearing before adoption. NRS 48.025(1) was adopted in 1971 and did not include the exception for "rules prescribed by the Supreme Court pursuant to statutory authority" that Fed. R. Evid. 402, as adopted in 1974, did. *See* 22A Charles Alan Wright & Kenneth W. Graham, Jr., *supra*, § 5191.1, at 7. We have not decided whether, given this omission, this court could use its formal rule-making authority under NRS 2.120(1) to promulgate exclusionary rules that conflict with NRS 48.025(1), and are not based on a statute or constitutional provision.

exclusionary rules that not only lack a basis in statute or constitutional text but conflict with the evidence code.

2. *The new exclusionary rule the majority announces will not advance Cooper's cause, as her failure to request such relief in district court confirms*

This case does not fairly present the issue the majority undertakes to decide. In district court, Cooper asked to postpone the probation revocation hearing altogether. She did *not* ask the district court to let her testify at the probation revocation hearing without having the testimony used against her in future criminal proceedings. *See Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) ("A point not urged in the trial court, unless it goes to the jurisdiction of that court, is deemed to have been waived and will not be considered on appeal."). Strategically, this made sense. No charges were pending against Cooper when the probation revocation hearing took place. The conduct that led to Cooper's arrest in Elko crossed state lines, from California, to Nevada, to Utah, and beyond, and involved Homeland Security and potential federal charges; at the time the probation revocation hearing occurred, the different jurisdictions were still sorting out what charges to bring, and where.

The majority's new exclusionary rule might protect a probationer like Cooper from having her probation-revocation-hearing testimony used against her in a later Nevada state-court criminal case. But, that protection would not extend to the federal courts, should Cooper be federally prosecuted, *see* 22A Charles Alan Wright & Kenneth W. Graham, Jr., *supra* § 5201, at 110 n.11 (federal not state law governs the admissibility of evidence in federal court) (collecting cases), and might or might not apply in other states' courts. To reverse and remand so the district court can extend Cooper a limited immunity she didn't request and that would not

protect her from the non-Nevada charges she potentially faced does not help her cause and I would deem the issue waived. *See People v. Koba*, 371 N.E.2d 1, 3 (Ill. App. 1977) (affirming probation revocation order and holding that the appellant probationer waived the argument for use immunity by not seeking it in district court); *State v. Watts*, No. A12-0317, 2012 WL 6734455, at *2 (Minn. App. Dec. 31, 2012) (rejecting argument that the district court abused its discretion by revoking appellant's probation without offering him limited use immunity where, as here, the appellant did not request this relief in district court).

3. *Dail has not proved unworkable*

The majority *sub silentio* overrules *Dail v. State*, 96 Nev. 435, 610 P.2d 1193 (1980), without the justification *stare decisis* requires to overrule existing case law. In *Dail*, we held that a defendant who is arrested while on probation and faces new criminal charges as a result does not have the right to delay a probation revocation hearing or to testify at such hearing under a grant of limited use immunity. *Id.* at 438-39, 610 P.2d at 1194-95. In doing so, we considered and rejected California's *People v. Coleman* decision. *Id.* at 439, 610 P.2d at 1195 ("[t]here exists a number of . . . cogent reasons why we are unable to subscribe to the holding in *People v. Coleman*"). *Dail* did not call on the Legislature to adopt the exclusionary rule judicially created in *Coleman*, as the majority suggests; *Dail* held that it was for the Legislature, not the court, to decide whether public policy supported adoption of such an exclusionary rule and, if so, to enact a statute creating one. *Id.*; *see* NRS 48.025(1)(a).

The doctrine of *stare decisis* requires adherence to past precedent unless "compelling," "weighty," or "conclusive" reasons exist for overruling it. *Miller v. Burk*, 124 Nev. 579, 597, 188 P.3d 1112, 1124 (2008); *compare id.* at n.63 ("a court generally will not disavow one of its precedents

SUPREME COURT
OF
NEVADA

(O) 1947A

4

unless serious detriment prejudicial to the public interest is demonstrated"), *with State v. Lloyd*, 129 Nev. 739, 750, 312 P.3d 467, 474 (2013) (prior case law will not be overruled unless "badly reasoned" and "unworkable"). The proceedings in district court do not establish the "compelling," "weighty," and "conclusive reasons" required to overturn *Dail*. In fact, they establish the opposite. First, as discussed above, the exclusionary rule will not help probationers like Cooper who face federal and possible out-of-state charges—and might even harm them by offering a false assurance Nevada courts cannot provide. Second, Nevada's district courts have taken to heart *Dail*'s concerns and are balancing them effectively on a case-by-case basis.

Apprised of the potential new charges Cooper faced, the district judge in this case took steps to minimize the prejudice to Cooper, yet protect the public and avoid undue delay. To those ends, the district judge bifurcated the probation revocation hearing, proceeding first on the probation violations alleged that predated and thus did not involve the potential new charges stemming from Cooper's Elko arrest. It was not until Cooper's California probation officer satisfactorily explained her non-reporting to Nevada, eliminating that basis for revoking probation, that the judge heard from the highway patrol officer who arrested Cooper in Elko. The officer testified that Cooper and her companion admitted they had been in Idaho, Utah, and Wyoming and that, when searched incident to her arrest, Cooper had concealed in her underwear fake identification and thousands of dollars in bogus gift and credit cards in other people's names.

The district judge then gave Cooper the opportunity to speak, advising her as follows:

> Ms. Cooper, I want to give you a chance to speak to me if you want to. You do need to be aware that

 

anything you say here could be used against you in some other jurisdiction.

So, with that caution, and you're not required to say anything, if you don't say anything I'm not going to hold that against you in any way, but I want to give you the opportunity if you do want to say anything.

The judge allowed Cooper to exercise her right of allocution without being sworn. Though she did not address her Elko arrest, Cooper spoke at length about her successes and failures while on probation and potential mitigation, and the State did not cross-examine her. Before ruling, the judge again addressed Cooper's Fifth Amendment concerns, reiterating that he did not "hold against her that she didn't talk about the facts of the [potential Elko charges]," and acknowledging that "[s]he did make a statement and the court has considered that."

"[T]he law is well-established that revocation of probation is within the exercise of the trial court's broad discretionary power and such an action will not be disturbed in the absence of a clear showing of abuse of that discretion." *Lewis v. State*, 90 Nev. 436, 438, 529 P.2d 796, 797 (1974). The evidence supporting a decision to revoke probation need only "satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation." *Id.* The district judge revoked Cooper's probation based on her unauthorized travel out of California to Nevada, Idaho, Utah, and Wyoming and the fact that, when stopped, "she had a fake Utah driver's license" and "concealed credit cards in her [underpants and] bra" that did not appear genuine.

The record supported the district judge's decision to revoke Cooper's probation. More important, it provides a roadmap for how, under *Dail*, a district judge should proceed when a probationer faces revocation

 

based on conduct giving rise to potential new state, federal, and extra-jurisdictional charges. The district judge did not abuse his discretion; he exercised it admirably.

For these reasons, I would affirm, not reverse, and therefore respectfully dissent.

_____, J.
Pickering

