PICKERING, J., dissenting:
I respectfully dissent, for three reasons. First, this court's "supervisory powers" do not authorize it, in deciding an individual case, to promulgate new evidentiary exclusionary rules that are neither statutorily nor constitutionally based. Second, even if the court had such broad supervisory powers, this case is a poor candidate for their exercise, given that Cooper asked the district court for a continuance, not a ruling she could testify and have her testimony excluded in a later proceeding, and with good reason: Cooper faced possible federal or out-of-state prosecution for the offense giving rise to her probation revocation proceeding, and a Nevada state court's promise to exclude evidence in future proceedings lacks extra-jurisdictional force. Finally, Dail v. State , 96 Nev. 435, 610 P.2d 1193 (1980), rejected the exclusionary rule the majority today adopts. Stare decisis counsels against overruling precedent unless the precedent has proved unworkable or badly reasoned and, as the district court's expert handling of Cooper's probation revocation hearing illustrates, Dail is functioning well and should not be overruled.
1. The court's "supervisory powers" do not authorize it to promulgate exclusionary rules that are not statutorily or constitutionally based
Nevada adopted its evidence code in 1971. See 1971 Nev. Stat., ch. 402. In doing so, Nevada adopted the broad rule of admissibility stated in NRS 48.025(1), which declares: "All relevant evidence is admissible, except: (a) As otherwise provided in this title [the Nevada Evidence Code; or] (b) As limited by the Constitution of the United States or of the State of Nevada." Like its federal counterpart, *730 Federal Rule of Evidence 402, NRS 48.025(1)"abolished the prior decisional law of evidence" such that, from the time of its adoption forward, "courts could not use their common law powers to create new exclusionary rules except through constitutional interpretation, statutory amendment [or interpretation], or the Supreme Court's [formal] rulemaking powers." 22A Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure: Evidence § 5199, at 95 (2d ed. 2014).[1]
The majority acknowledges that its new exclusionary rule is not statutorily based or constitutionally required. Maj. op., supra, at 725, 727-28. Lacking statutory or constitutional predicate, it invokes its "supervisory powers" to justify creating a new exclusionary rule. Id. at 727-28. But without a basis in statute or constitutional text, this new rule conflicts with NRS 48.025(1) 's declaration that "all relevant evidence is admissible" and, ultimately, with the point of having a uniform evidence code. See 22A Charles Alan Wright & Kenneth W. Graham, Jr., supra, § 5199, at 99 & n.26 (criticizing the California Supreme Court for "continu[ing] to churn out new exclusionary rules despite the adoption of the Evidence Code" and for "using 'supervisory power' to [judicially] create [an exclusionary] rule barring use of probationer's testimony at a revocation hearing against him at a later criminal trial," citing People v. Coleman, 13 Cal.3d 867, 120 Cal.Rptr. 384, 533 P.2d 1024 (1975) ). It is unwise to invoke supervisory powers to promulgate evidentiary exclusionary rules that not only lack a basis in statute or constitutional text but conflict with the evidence code.
2. The new exclusionary rule the majority announces will not advance Cooper's cause, as her failure to request such relief in district court confirms
This case does not fairly present the issue the majority undertakes to decide. In district court, Cooper asked to postpone the probation revocation hearing altogether. She did not ask the district court to let her testify at the probation revocation hearing without having the testimony used against her in future criminal proceedings. See Old Aztec Mine, Inc. v. Brown, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) ("A point not urged in the trial court, unless it goes to the jurisdiction of that court, is deemed to have been waived and will not be considered on appeal."). Strategically, this made sense. No charges were pending against Cooper when the probation revocation hearing took place. The conduct that led to Cooper's arrest in Elko crossed state lines, from California, to Nevada, to Utah, and beyond, and involved Homeland Security and potential federal charges; at the time the probation revocation hearing occurred, the different jurisdictions were still sorting out what charges to bring, and where.
The majority's new exclusionary rule might protect a probationer like Cooper from having her probation-revocation-hearing testimony used against her in a later Nevada state-court criminal case. But, that protection would not extend to the federal courts, should Cooper be federally prosecuted, see 22A Charles Alan Wright & Kenneth W. Graham, Jr., supra § 5201, at 110 n.11 (federal not state law governs the admissibility of evidence in federal court) (collecting cases), and might or might not apply in other states' courts. To reverse and remand so the district court can extend Cooper a limited immunity she didn't request and that would not protect her from the non-Nevada charges she potentially faced does not help her cause and I would deem the issue waived. See People v. Koba, 55 Ill.App.3d 298, 13 Ill.Dec. 306, 371 N.E.2d 1, 3 (1977) (affirming probation revocation order and holding that the appellant probationer waived the argument for use immunity by not seeking it in district court);
*731 State v. Watts, No. A12-0317, 2012 WL 6734455, at *2 (Minn. App. Dec. 31, 2012) (rejecting argument that the district court abused its discretion by revoking appellant's probation without offering him limited use immunity where, as here, the appellant did not request this relief in district court).
3. Dail has not proved unworkable
The majority sub silentio overrules Dail v. State, 96 Nev. 435, 610 P.2d 1193 (1980), without the justification stare decisis requires to overrule existing case law. In Dail , we held that a defendant who is arrested while on probation and faces new criminal charges as a result does not have the right to delay a probation revocation hearing or to testify at such hearing under a grant of limited use immunity. Id. at 438-39, 610 P.2d at 1194-95. In doing so, we considered and rejected California's People v. Coleman decision. Id. at 439, 610 P.2d at 1195 ("[t]here exists a number of ... cogent reasons why we are unable to subscribe to the holding in People v. Coleman "). Dail did not call on the Legislature to adopt the exclusionary rule judicially created in Coleman , as the majority suggests; Dail held that it was for the Legislature, not the court, to decide whether public policy supported adoption of such an exclusionary rule and, if so, to enact a statute creating one. Id. ; see NRS 48.025(1)(a).
The doctrine of stare decisis requires adherence to past precedent unless "compelling," "weighty," or "conclusive" reasons exist for overruling it. Miller v. Burk, 124 Nev. 579, 597, 188 P.3d 1112, 1124 (2008) ; compare id. at n.63 ("a court generally will not disavow one of its precedents unless serious detriment prejudicial to the public interest is demonstrated"), with State v. Lloyd , 129 Nev. 739, 750, 312 P.3d 467, 474 (2013) (prior case law will not be overruled unless "badly reasoned" and "unworkable"). The proceedings in district court do not establish the "compelling," "weighty," and "conclusive reasons" required to overturn Dail . In fact, they establish the opposite. First, as discussed above, the exclusionary rule will not help probationers like Cooper who face federal and possible out-of-state charges-and might even harm them by offering a false assurance Nevada courts cannot provide. Second, Nevada's district courts have taken to heart Dail ' s concerns and are balancing them effectively on a case-by-case basis.
Apprised of the potential new charges Cooper faced, the district judge in this case took steps to minimize the prejudice to Cooper, yet protect the public and avoid undue delay. To those ends, the district judge bifurcated the probation revocation hearing, proceeding first on the probation violations alleged that predated and thus did not involve the potential new charges stemming from Cooper's Elko arrest. It was not until Cooper's California probation officer satisfactorily explained her non-reporting to Nevada, eliminating that basis for revoking probation, that the judge heard from the highway patrol officer who arrested Cooper in Elko. The officer testified that Cooper and her companion admitted they had been in Idaho, Utah, and Wyoming and that, when searched incident to her arrest, Cooper had concealed in her underwear fake identification and thousands of dollars in bogus gift and credit cards in other people's names.
The district judge then gave Cooper the opportunity to speak, advising her as follows:
Ms. Cooper, I want to give you a chance to speak to me if you want to. You do need to be aware that anything you say here could be used against you in some other jurisdiction.
So, with that caution, and you're not required to say anything, if you don't say anything I'm not going to hold that against you in any way, but I want to give you the opportunity if you do want to say anything.
The judge allowed Cooper to exercise her right of allocution without being sworn. Though she did not address her Elko arrest, Cooper spoke at length about her successes and failures while on probation and potential mitigation, and the State did not cross-examine her. Before ruling, the judge again addressed Cooper's Fifth Amendment concerns, reiterating that he did not "hold against her that she didn't talk about the facts of the [potential Elko charges]," and acknowledging that "[s]he did make a statement and the court has considered that."
*732 "[T]he law is well-established that revocation of probation is within the exercise of the trial court's broad discretionary power and such an action will not be disturbed in the absence of a clear showing of abuse of that discretion." Lewis v. State , 90 Nev. 436, 438, 529 P.2d 796, 797 (1974). The evidence supporting a decision to revoke probation need only "satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation." Id. The district judge revoked Cooper's probation based on her unauthorized travel out of California to Nevada, Idaho, Utah, and Wyoming and the fact that, when stopped, "she had a fake Utah driver's license" and "concealed credit cards in her [underpants and] bra" that did not appear genuine.
The record supported the district judge's decision to revoke Cooper's probation. More important, it provides a roadmap for how, under Dail , a district judge should proceed when a probationer faces revocation based on conduct giving rise to potential new state, federal, and extra-jurisdictional charges. The district judge did not abuse his discretion; he exercised it admirably.
For these reasons, I would affirm, not reverse, and therefore respectfully dissent.

NRS 2.120 authorizes this court to adopt rules by formal rule-making procedures, which this court has construed to require public notice and hearing before adoption. NRS 48.025(1) was adopted in 1971 and did not include the exception for "rules prescribed by the Supreme Court pursuant to statutory authority" that Fed. R. Evid. 402, as adopted in 1974, did. See 22A Charles Alan Wright & Kenneth W. Graham, Jr., supra, § 5191.1, at 7. We have not decided whether, given this omission, this court could use its formal rule-making authority under NRS 2.120(1) to promulgate exclusionary rules that conflict with NRS 48.025(1), and are not based on a statute or constitutional provision.